[906 NYS2d 744]

RIVERBAY CORPORATION, Petitioner, v VERONICA CARREY et al., Respondents.

Civil Court of the City of New York, Bronx County, August 20, 2010

APPEARANCES OF COUNSEL

*Lazarus, Lazarus & Winston*, Bronx, for petitioner. *Veronica Carrey*, respondent pro se. *Russell Grant*, respondent pro se. *Vanessa Grant*, respondent pro se.

**OPINION OF THE COURT**

SABRINA B. KRAUS, J.

## Background

These summary nonpayment proceedings were commenced by Riverbay Corporation (petitioner). In both cases the issue as to whether surcharges constitute rent and are properly sought in a proceeding brought pursuant to RPAPL 711 (2) arose during the course of the proceeding. As the two proceedings contain this common issue, the pending motions are consolidated for disposition herein.

*Riverbay Corporation v Carrey* (Index No. 1493/10)

This nonpayment proceeding was commenced by service of a rent demand dated November 30, 2009. The demand sought arrears of $5,538.03 alleged due through November 2009. Of that sum the demand sought $4,360.25 for a prior surcharge, $79.13 for a surcharge, $66.24 for parking charges, and $255 for legal, late and administrative fees. Only $777.41, the rent for November 2009, out of the $5,538.03 sued for was for basic monthly carrying charges. The petition and notice of petition are dated January 8, 2010. Respondent filed an answer on January 29, 2010 asserting a general denial. On February 5, 2010, the first court date, the parties entered into a stipulation settling the matter. Respondent acknowledged owing $4,124.71 in arrears and agreed to pay said sum within one week. As to the surcharges sued for, the stipulation provided "(i)n addition Resp agrees to provide landlord w/a certified copy of 2006 Tax Transcript by 3/15/10 regarding LL's claim for add 4,360.25—If not LL may restore case to court on notice to resp seeking judgment."

On April 7, 2010, petitioner moved to restore the case to the calendar, alleging respondent had failed to pay or otherwise

resolve the surcharge for $4,360.25. The motion was withdrawn by petitioner due to defects in service. On April 22, 2010, petitioner renewed its motion. Petitioner asserted that respondent had failed to submit a certified copy of her 2006 tax transcript, and petitioner requested a judgment be entered based on said default. Respondent failed to appear in court on the return date of the motion. The court requested petitioner submit a memorandum of law in support of its request for a possessory judgment for the surcharge. The memorandum was submitted on June 7, 2010, and the court reserved decision on said date.[1]

*Riverbay Corp. v Vannessa & Russell Grant* (Index No. 1414/10)

This nonpayment proceeding was commenced in November 2009 by service of a written rent demand. The demand is dated November 30, 2009 and sought a total of $8,453.35. In addition to $1,091.32 in carrying charges, the demand sought $6,051.23 for a prior surcharge, $1,000 for a community complaint surcharge, $180 for legal and late fees, $66.24 for a parking fee, $16 charge for "Hall Closet" and $48.56 for an administrative fee. Only $1,091.32, of the $8,453.35 sued for, is for current carrying charges for the month in which the demand was issued, November 2009. The notice of petition and petition are dated January 8, 2010.

Respondent Russell Grant filed an answer on January 26, 2010 asserting a general denial and disputing the community complaint fee. The case was originally returnable on February 2, 2010. On February 2, 2010, Russell Grant appeared in court, and the parties entered into a stipulation of settlement. Petitioner agreed to sever the community complaint charge for a plenary action.[2] Petitioner asserted an additional $11,168.60 was due through February 2010, including $6,120.86 in "back surcharges assessed for the 2006 calendar year pursuant to a DHCR audit."

Respondent agreed to pay the undisputed amount of $5,047.74 to petitioner on or before February 26, 2010. The stipulation

---

1. Subsequent to said submission additional submissions were made at the court's request consisting of: a copy of the occupancy agreements for respondents, a copy of the bylaws, and the relevant income affidavits and Division of Housing and Community Renewal (DHCR) annual income verification report.

2. While petitioner has a practice of including claims for parking fees and community complaint charges in summary nonpayment proceedings, it generally severs such claims once in court.

further provided that respondent would provide petitioner with certified New York State tax transcripts for 2006 for "all persons listed on the 2006 annual income affidavit" by March 2, 2010. The stipulation further provided that "upon production of the transcripts, Petitioner shall determine if any surcharges are based upon the income reported to the State." The stipulation further provided that upon default, petitioner could restore the proceeding for the entry of a judgment.

Petitioner moved to restore the case to the calendar on March 30, 2010. Russell Grant appeared, and the parties agreed to adjourn the motion to April 27, 2010, for respondent to submit transcripts to resolve the disputed surcharge. On April 27, 2010, respondent did not appear in court in opposition to petitioner's motion. The court requested petitioner submit legal authority in support of its request for relief; this was submitted on June 7, 2010, and the court reserved decision.

## Discussion

These summary nonpayment proceedings are brought pursuant to RPAPL 711 (2), which provides in pertinent part that a special proceeding may be maintained pursuant to article 7 of the RPAPL when "[t]he tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held."

Petitioner is a Mitchell-Lama coop governed by the Private Housing Finance Law. The New York State Division of Housing and Community Renewal is responsible for regulating and monitoring 189 projects currently in the Mitchell-Lama program, including petitioner, Riverbay Corporation, also known as Co-op City, the largest Mitchell-Lama development in the state, consisting of 15,372 units (State of New York Office of the Inspector General, Kristine Hamann, An In-Depth Review of the Division of Housing and Community Renewal's Oversight of the Mitchell-Lama Program [Sept. 2007]).[3]

For the year ending in 2006, the rent or carrying charges per room were factored at $146.81. The glossary of DHCR's 2007 Annual Report defines rent or carrying charges as "Rent or carrying charge per room, per month. Basic rent or carrying charge that residents are required to pay monthly on a per room basis, not including charges for parking or surcharges" (DHCR, 2007

---

3. The report contains findings regarding DHCR oversight of Co-op City and asserts that there was "a virtual abdication by DHCR of its oversight responsibilities regarding financial matters" (*id.* at 5).

Annual Report, Mitchell-Lama Housing Companies in New York State, at v). The DHCR report further provides that in 2006, petitioner collected $3,716,000 in surcharges, that 99% of the apartments in the complex were occupied and that the income range of tenants admitted was between $50,778 and $125,736 (*id.* at 11).

Section 2 (27) of the Private Housing Finance Law defines "Total carrying charges" as

> "All charges paid to the housing company by a person or family living in a project under a lease for ninety-nine years renewal, or in perpetuity, or by reason of ownership of stock in such company. The word 'rental' shall mean and be interchangeable with 'total carrying charges' when used in connection with a mutual company."

Mitchell-Lama projects are designed to be self-sustaining; the operating costs are to be met by the rents. Pursuant to Private Housing Finance Law § 31 (4), prior to July 1, 1981, 25% of the rental surcharges collected were not paid to the landlord or coop board, but instead were to be turned over by the housing company to the municipality which granted the applicable tax exemption.

The 2007 Inspector General Report alleges that neither the Mitchell-Lama housing companies nor DHCR was enforcing provisions requiring removal of over-income residents. The Report provided as follows:

> "Tenants or cooperative shareholders must fall within a certain income range in order to reside in Mitchell-Lama housing. The law allows some flexibility for rising incomes once new residents have occupied their apartments . . . However, when a resident's income exceeds the maximum by more than 50 percent, that person or family is no longer eligible to reside in Mitchell-Lama housing. According to regulations, it is the responsibility of housing companies, subject to approval of the commissioner, to 'require persons or families to remove as required by law when incomes exceed legal limits.' When a tenant refuses or fails to file income information, he is assumed to have excess income and is also subject to eviction.
>
> "In fact, housing companies and DHCR do not enforce income eligibility requirements for existing tenants. When income exceeds the maximum by

more than 50 percent, or when residents fail to submit income affidavits, residents are charged the maximum surcharge but are allowed to remain in their subsidized apartments." (State of New York Office of the Inspector General, Kristine Hamann, An In-Depth Review of the Division of Housing and Community Renewal's Oversight of the Mitchell-Lama Program, at 48 [Sept. 2007], citing Private Housing Finance Law § 31 [3]; 9 NYCRR 1727-2.2 [e]; 1727-2.6 [a]; 1727-5.3 [a] [7]; [f] [1].)

The report additionally notes that there is a shortage of available Mitchell-Lama apartments and that because waiting lists are typically long, slow moving or completely closed, it may be several years before an eligible individual obtains housing (id. at 11).

The tenancies at Riverbay Corporation are governed by occupancy agreements[4] in addition to the applicable regulations. The occupancy agreement for the subject premises provides in the second article that respondent agrees to pay an "annual carrying charge . . . in equal monthly installments." The agreement further provides that payments are due on the first of the month and "shall be deemed to be payments on account of the Member's annual obligation, which is hereby defined to be the Member's proportionate share of the operating costs of the Cooperative."

The fourth article, subparagraph 17, of the occupancy agreement provides that respondent "agrees to pay surcharge rents in accordance with the schedule or schedules of surcharge rents approved by the Commissioner, which surcharges will be deemed to be additional carrying charges due hereunder."

Similarly, the fifth article of the occupancy agreement addresses attorneys' fees and other potential costs which petitioner may incur and provides that said sums "shall be deemed to be additional carrying charges hereunder."

It has been held that maintenance and surcharges differ in their primary purpose with one court noting that "[i]t is important . . . to bear in mind the distinct functions of maintenance . . . as distinct from surcharges upon over-income residents. Maintenance charges are used for the upkeep of the premises, while surcharges are in [the] nature [of] a penalty" (*Committee for Maintenance and Privatization Fair Play at Riv-*

---

4. The governing provisions of the occupancy agreements in both pending proceedings are identical.

*ercross v Jones*, NYLJ, Nov. 17, 1999, at 28, col 1 [Sup Ct, NY County]).

9 NYCRR 1727-3.3 (a), part of the governing regulations for DHCR-supervised Mitchell-Lama projects, provides that rent entered on the lease form shall be actual rent, including surcharges if any, assessed against the tenant or cooperator at the time the lease is signed. 9 NYCRR 1727-2.6 (a) provides that the "failure, neglect or refusal" of a cooperator to furnish necessary information to verify reported income shall result in the maximum surcharge being assessed. It further provides:

> "However, upon submission of an affidavit of income and/or of proper documentation, surcharges, if any, will be assessed on [the] basis of verified income, with the effective date of any rent change to be the first of the month following the month in which the affidavit of income and/or proper documentation had been filed with the housing company. In no event will credit be given for excess surcharges already assessed as a result of failure, neglect or refusal of tenant or cooperator to cooperate in income determination as set forth in this section." (*Id.*)

In the cases before the court, the disputed surcharges arose as a result of a DHCR audit. DHCR has a practice of verifying the annual reported income of tenants with the Department of Taxation and Finance using a computer matching program. Using Social Security numbers and last names as identifiers, Taxation and Finance compares income reported on income affidavits with that reported on state income tax returns and provides DHCR with results, which DHCR in turn provides to the housing companies on an annual income verification report.

*Riverbay Corporation v Carrey* (Index No. 1492/10)

As to this respondent, an income affidavit was filed by respondent for 2007 reporting a combined household income of $60,400, with Ms. Carrey reporting income of $32,400 and Millicent Dorkenu reporting income of $28,000. In the annual income verification report, DHCR indicates that while respondent's Social Security number was found in Taxation and Finance's

files, the name did not match the name provided and respondent's income was therefore not considered verified.[5]

*Riverbay Corp. v Vanessa & Russell Grant* (Index No. 1414/10)

As to these respondents, they filed an income affidavit for 2007 providing that they had a combined income of $80,000 and filed individual returns. The DHCR annual income verification report indicates that as to Vanessa Grant, the income she reported on her affidavit is less than the income reported on her state tax return by $500 or more. As to Russell Grant, the report indicates that his Social Security number was not found in Taxation and Finance's files and his income has not been verified.

Under the established procedures, each tenant with a household member having unverified income must submit to the housing company a certified copy of that member's New York State income tax return for the calendar year under review. Noncompliance is assumed to indicate excess income and results in the assessment of a retroactive maximum surcharge for the 12-month period beginning July 1 of the year following the calendar year under review (*id.*).

## Legal Analysis

There is existing case law on the issue of whether surcharges in a Mitchell-Lama cooperative are considered rent, and the proper subject of a summary nonpayment proceeding. In *Lincoln Amsterdam House v Baxter* (224 AD2d 207 [1st Dept 1996]) the Appellate Division held that surcharges did not constitute "rent." The Court based its holding on the fact that a refinancing agreement between the United States Department of Housing and Urban Development (HUD) and the landlord did not include surcharges in the definition of rent. However, the landlord commenced that action against the tenants in Supreme Court, and then moved for summary judgment and an order requiring the tenants to pay the entire monthly rental for the apartment, a 50% surcharge and attorneys' fees. The trial court granted landlord's motion for summary judgment, and that order was affirmed by the Appellate Division decision (*id.*). The Court's holding that the surcharge did not constitute rent was

---

5. DHCR acknowledges a defect in the computer matching program which affects spouses with different surnames who file a joint tax return. In these cases, the income is properly verified for the primary joint filer, but the spouse is reported as unmatched. It does not appear that this defect would affect respondent and Ms. Dorkenu, who are sisters with different last names, filing separate returns.

not made within the context of whether the arrears were the proper subject of a summary proceeding, but rather was made to defeat the tenants' argument that the surcharge was preempted by section 236 of the National Housing Act (codified at 12 USC § 1715z-1).

Shortly after *Lincoln Amsterdam House*, the Appellate Term held in a different context in *Riverbend Hous. Co. v Stephenson* (172 Misc 2d 385 [App Term, 1st Dept 1997]) that equity increases for capital improvements on a New York City Department of Housing Preservation and Development (HPD) regulated Mitchell-Lama coop did constitute rent under the governing occupancy agreement, and thus were the proper subject of a summary nonpayment proceeding. Later that same year, in *Riverbend Hous. Co. Inc. v Prince* (NYLJ, Dec. 3, 1997, at 29, col 1), the majority of the Appellate Term confirmed the ruling in *Stephenson*, but Justice Freedman issued a dissenting opinion. Justice Freedman wrote "Although I concurred with the majority in *Riverbend Housing Co. v [Stephenson]*, upon further reflection I dissent from the majority's decision here to the extent that it awards a possessory judgment to landlord based on tenant's failure to pay stock equity increase charges." Justice Freedman based her dissent on an interpretation of governing regulations which she found to be inconsistent with the occupancy agreement, and the fact that HPD refused to apply SCRIE (Senior Citizen Rent Increase Exemption) to the tenants in either *Prince* or *Stephenson* for the stock equity increase (*id.*).

In *Matter of Bedford Gardens Co. v Silberstein* (269 AD2d 445 [2d Dept 2000]) the Appellate Division, Second Department held that the surcharges imposed on the Mitchell-Lama tenants were not "rent" and therefore not subject to suit in a summary nonpayment proceeding pursuant to RPAPL 711 (2). The decision was brief, but affirmed the Appellate Term's decision that the housing court lacked subject matter jurisdiction over the claim for surcharges. The Appellate Term decision *Bedford Gardens v Silberstein* (NYLJ, June 29, 1998, at 30, col 4) detailed that its holding was based on a provision of an agreement between HUD, New York City and the landlord, which stated that "[m]ortgagor shall collect surcharges not to be deemed rent." The Appellate Term also held that the landlord had waived the right to argue that the surcharge constituted rent in housing court, but this portion of the Appellate Term's holding is not referenced in the Appellate Division decision (*see also*

*Matter of Dayton Towers Corp. v Gethers*, 24 AD3d 663 [2d Dept 2005] [landlord could not recover Mitchell-Lama surcharges in a summary proceeding]).

Both *Bedford Gardens* and *Lincoln Amsterdam House* involved HPD-regulated Mitchell-Lama coops. The subject premises is a DHCR-regulated Mitchell-Lama coop. State-financed Mitchell-Lama projects are subject to DHCR supervision and are governed by the Official Compilation of Codes, Rules and Regulations (9 NYCRR part 1700 *et seq.*). Projects financed by loans issued by the City of New York are supervised by HPD (Private Housing Finance Law § 2 [15]) and are governed by the Rules of the City of New York.

Prior to the decisions of *Bedford Gardens* (2000) and *Lincoln Amsterdam House* (1996), the Appellate Division, Second Department issued a decision holding that surcharges did constitute rent (*Matter of Brightwater Towers Assoc. v New York State Div. of Hous. & Community Renewal*, 212 AD2d 603 [2d Dept 1995]). In *Brightwater Towers*, the Appellate Division reviewed the lower court's determination in a CPLR article 78 proceeding. The specific issue before the Court was whether the initial rent for rent stabilization purposes, after the project was no longer subject to Mitchell-Lama regulations, should include income-based surcharges.

The Appellate Division held that the Commissioner's determination that income surcharges should be included in the initial regulated rent was not unreasonable.

> "The Rent Stabilization Code provides that, for housing accommodations where rentals were previously regulated under the Private Housing Finance Law, 'the initial legal registered rent shall be the rent charged to and paid by the tenant in occupancy on the date such regulation ends.' Moreover, Private Housing Finance Law regulations provide, *inter alia*, that the rent entered on a lease shall include surcharges being assessed against the tenant" (*id.* at 604-605 [citations omitted]).

The same decision held that a non-income-based surcharge should not have been included in the calculation of the tenants' initial rent (*id.* at 604).

More recent decisions, however, suggest there remains some ambiguity as to whether and which surcharges are the appropriate subject of a summary proceeding. In 2006, the Appellate Term in *Riverbay Corp. v Hibbert* (13 Misc 3d 136[A], 2006 NY

Slip Op 52090[U] [2006]) reversed the trial court's award to the landlord of a judgment in a nonpayment proceeding, which included surcharges for incomplete or late filing of income certification documents. The court held:

> "Even assuming, arguendo, that the Mitchell-Lama housing surcharges sought herein by petitioner are properly recoverable in a summary nonpayment proceeding brought pursuant to RPAPL 711(2) (*cf. Matter of Dayton Towers Corp. v Gethers*, 24 AD3d 663 [2005]), the possessory judgment issued below cannot be sustained on this record, which establishes that respondent Hibbert timely submitted the requisite 2003 income affidavit and substantially complied with the landlord's subsequent request for additional documentation." (*Id.*)

Similarly, the Second Department in *Rochdale Vil., Inc. v Goode* (16 Misc 3d 49 [2007]) addressed whether an occupant of a State-assisted Mitchell-Lama cooperative apartment, who asserted succession rights, may assert defenses in a summary nonpayment proceeding. The Court held that while the occupant should be permitted to assert defenses, succession claims should be exclusively vested with DHCR, relying on rulings applicable to HPD-governed Mitchell-Lama units. The Court held "[i]n view of the similarity between the two sets of regulations, the same rule of exclusivity of jurisdiction that is applied in city-assisted Mitchell-Lama housing should be applied in state-assisted Mitchell-Lama housing." (*Id.* at 52.) The Court overruled the trial court's award of a final judgment to the landlord and dismissed the petition based on defects in the predicate notice. The Court held "[i]n view of the foregoing, we do not pass on whether surcharges imposed in state-assisted Mitchell-Lama housing constitute 'rent' so as to be subject to recovery in a summary proceeding" (*id.* at 53, citing *Lincoln Amsterdam House v Baxter*, 224 AD2d 207 [1996] and *Matter of Dayton Towers Corp. v Gethers*, 24 AD3d 663 [2005], *supra*).

The specific efforts made by the courts to refrain from passing on the issue of whether the surcharges constituted rent subject to recovery in a summary nonpayment proceeding suggest that the answer to the question is not immediately apparent.

Based on the foregoing, this court finds that there are principally two different types of surcharges in DHCR-governed Mitchell-Lama housing, those based on actual verified income,

designed to impose a greater burden on higher income tenants to contribute to the overall operating costs of the project, and those which are designed to be a penalty for failure to comply with income verification procedures.

Considering the above-discussed applicable definitions of rent and carrying charges as discussed in the occupancy agreement, governing laws and regulations, and deferring to the interpretation of the governing agency, which treats the surcharges based on actual verified income as rent (*Matter of Brightwater Towers Assoc. v New York State Div. of Hous. & Community Renewal*, 212 AD2d 603 [1995], *supra*), the court finds that surcharges based on verified income are surcharges that constitute rent and the proper subject of a summary nonpayment proceeding, brought pursuant to RPAPL 711 (2). The court further holds that those surcharges not based on verified income are more in the nature of a penalty, do not constitute rent and are thus not the proper subject of a summary nonpayment proceeding.

The court is mindful, in making said determination, that different results for HPD- and DHCR-governed projects seem inappropriate, given the similarities in the legislative intent behind the programs and the governing regulations. Notwithstanding these similarities, the contractual basis for the holdings in *Bedford Gardens* and *Lincoln Amsterdam Houses* (*supra*), that surcharges do not constitute rent subject to a summary proceeding, does not exist in the cases at bar.

While the court is concerned about the assertion of a lack of enforcement by petitioner and DHCR in removing over-income tenants from the projects, when required to do so under the regulations, and mindful that providing a summary proceeding as a mechanism to collect the surcharges hardly encourages enforcement, that is a policy determination not before this court.

The court's holding is based on the language in the occupancy agreement, which specifically provides that income-related surcharges "will be deemed to be additional carrying charges due hereunder." This express contractual agreement is also reflected in DHCR's interpretation that verified income charges constitute rent, and the structure of the projects, which are designed to proportionately divide the carrying costs necessary to cover the operating expenses of the project as referenced in the occupancy agreement: "payments shall be deemed to be payments on account of the Member's annual obligation, which is hereby defined to be the Member's proportionate share of the operating costs of the Cooperative" (Carrey Occupancy Agreement art 2).

In the two proceedings before this court the assessed surcharges are not based on the verified income of the respondents. In *Riverbay v Carrey* the basis of the surcharge is respondent's failure to provide a certified copy of the 2006 tax transcript. As such the surcharge is not based on her verified income, but is a penalty for her failure to comply with the verification procedure. Respondent may be subject to eviction in a holdover proceeding for this breach, and petitioner may sue for the surcharges in a plenary action, but the court does not find that they constitute rent as defined by RPAPL 711 (2).

Similarly, in *Riverbay v Grant,* while the DHCR audit indicates a difference between the income reported by Ms. Grant and the income indicated on her taxes, her income was not verified and no income was determined as to Russell Grant. Thus the surcharges are in the nature of a penalty rather than in the nature of rent.

Based on the foregoing, the surcharges sought by petitioner as against respondents are not based on actual verified income, but are based on a failure by the respondents to properly and fully comply with the income verification procedures. They are therefore penalty surcharges, and are not the proper subject of this summary nonpayment proceeding. Assuming respondents do not cure these defaults, petitioner may elect to commence a holdover proceeding against respondents, or petitioner may sue for the surcharges in a plenary action.

Based on the foregoing the motions are denied.