Rochdale Vil., Inc. v Hallerdin-Grant (2024 NY Slip Op 24192)

[*1]

Rochdale Vil., Inc. v Hallerdin-Grant

2024 NY Slip Op 24192

Decided on July 10, 2024

Civil Court Of The City Of New York, Queens County

Schiff, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 10, 2024
Civil Court of the City of New York, Queens County

Rochdale Village, Inc., Petitioner,

against
Anthony Hallerdin-Grant, et al., Respondents.

Index No. L&T 317963/23

Matilde Pena & Associates
Attorneys for Petitioner
Queens Legal Services
Attorneys for Respondent

Logan J. Schiff, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of Respondent Anthony Hallerdin-Grant's motion to dismiss: NYSCEF 7-20.
 RELEVANT BACKGROUND AND PROCEDURAL HISTORY
Petitioner Rochdale Village, Inc. ("Petitioner") commenced this breach of lease holdover proceeding against Respondent Anthony Hallerdin-Grant ("Respondent") by Petition dated October 11, 2023, seeking to recover possession of apartment 10G in the building located at 172-30 133rd Avenue, Jamaica, New York 11434. Prior to commencement, Petitioner served a 10-day notice to cure dated June 16, 2023 (NYSCEF 1 at 4-6), followed by a 10-day notice of termination dated July 20, 2023 (NYSCEF 8-10).
The subject premises are a limited profit cooperative corporation organized under Article II of the Private Housing Finance Law, commonly referred to as the Mitchell-Lama Law, a statutory scheme intended to provide affordable housing to low- and middle-income families (see Berkovich v Motovaya, 22 Misc 3d 91 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2009], citing Private Housing Finance Law § 11). As a state-assisted Mitchell-Lama cooperative, the building is under the supervision of the Division of Housing and Community Renewal ("DHCR"), which sets the monthly maintenance and other carrying charges and has promulgated regulations setting forth the requirements for termination of tenancies (see 9 NYCRR §§ 1727-5.3). Respondent is the owner of the shares of stock associated with the subject cooperative apartment and is a tenant-cooperator pursuant to an occupancy agreement with Petitioner (see NYSCEF 12).
The crux of this proceeding is premised on Respondent's failure to submit annual income affidavits for the years 2019-2022 in violation of Mitchell-Lama program rules and the lease (see [*2]NYSCEF 1 at 4-5). In addition, the Petition alleges that Respondent has failed to pay the monthly maintenance, as well as surcharges imposed because of Respondent's untimely submission of the income affidavits, which Petitioner asserts are independent bases for terminating Respondent's tenancy (see NYSCEF 1 at 9-10).
Respondent now moves to dismiss pursuant to CPLR 3211(a)(7) for failure to state a cause of action. Respondent argues that it is apparent from the four corners of Petitioner's termination notice that Respondent submitted all necessary income affidavits before the deadline set in Petitioner's notice to cure, thereby obviating any alleged default and precluding an eviction. Respondent further argues that there is no cause of action in a holdover based on the failure to pay surcharges or maintenance, and that Petitioner's only summary remedy, if any, is a nonpayment proceeding. Petitioner opposes the motion in all respects and argues that even if Respondent cured the breach related to the submission of income affidavits, it may nonetheless proceed on a separate ground enumerated in the termination notice based on Respondent's willful misrepresentation or concealment of his income (see 9 NYCRR §§ 1727-5.3[a][7]). In reply, Respondent argues that Petitioner has failed to state a cause of action as to willful misrepresentation or concealment, as Petitioner's termination notice is bereft of any non-conclusory supporting facts.

 ANALYSIS
In a state-assisted Mitchell-Lama cooperative, a landlord may only commence a breach of lease holdover after serving a termination notice reciting an authorized ground for eviction and stating the facts supporting the claim (see 9 NYCRR §§ 1727-5.3[b][2]). Here, the core basis alleged for eviction in Petitioner's termination notice is Respondent's failure to timely complete annual income affidavits for the years 2019-2022, a violation of the parties' lease and DHCR regulations. Submission of annual income affidavits and related forms is an important requirement of living in a Mitchell-Lama cooperative as regulators "rely on these affidavits to monitor both the number and aggregate income of occupants, information that is crucial to determining the appropriate amount of rent and to ensuring that tenants remain eligible for the rental subsidy." (Matter of Murphy v New York State Div. of Hous. & Community Renewal, 21 NY3d 649, 654 [2013]).
The consequences of a tenant-cooperator's failure to submit annual income information are twofold. First, a landlord may charge surcharges as added rent until the affidavits are submitted as a means of compelling compliance (see 9 NYCRR § 1727-2.6 [a]). Second, and independent from the right to impose surcharges, DHCR regulations allow for eviction following service of a termination notice where a cooperator "refuses to divulge his or her true income or that of other persons residing in the apartment" (9 NYCRR §§ 1727-5.3[a)][6][ii]). However, in contrast to certain grounds for eviction, the failure to submit income affidavits is curable conduct, requiring a notice to cure prior to termination of the tenancy "setting forth with specificity the violation alleged and stating that the violation must be cured within 10 days or eviction proceedings may be commenced" (9 NYCRR §§ 1727-5.3[b][1]).
Where a landlord is obligated to serve a notice to cure, whether by requirement of statute or lease, the notice must be more than a "mere formality" (Sudimac v Beck, 63 Misc 3d 1208[A] [Civ Ct, Queens Co 2019]). The notice must provide a fact-specific description of the offending conduct and cite to the relevant lease provision violated, so as to afford the tenant the opportunity to take the necessary "remedial action required by the lease" to avoid a forfeiture (Chinatown Apartments Inc. v. Chu Cho Lam, 51 NY2d 786 [1980]; see also 1346 Park Place [*3]HDFC v Wright, 52 Misc 3d 18 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016]; 240 W. 37th LLC v. BOA Fashion, Inc, 24 Misc 3d 145[A] [App Term, 1st Dept 2009]; ShopRite Supermarkets, Inc. v. Yonkers Plaza Shopping, LLC, 29 AD3d 564 [2d Dept 2006]; Filmtrucks, Inc. v. Express Indus. & Term. Corp., 127 AD2d 509 [1st Dept 1987]). In addition, if a landlord determines that the default was not cured during the cure period, it must recite in the termination notice non-conclusory additional facts evidencing an ongoing breach (see Tomfol Owner Corp. v Hernandez, 201 AD3d 453 [1st Dept 2022]; 31-67 Astoria Corp. v. Landaira, 54 Misc 3d 131[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]; Rochdale Vil., Inc. v Stone, 66 Misc 3d 737 [Civ Ct, Queens Co 2019]; Hew-Burg Realty v. Mocerino, 163 Misc 2d 639 [Civ Ct, Kings Co 1994]).
Petitioner's notice to cure dated June 16, 2023, advised Respondent that he had not completed annual income affidavits for the years 2019 to 2022, and that he was "required to cure said default by July 10, 2023" (NYSCEF 1 at 4-6). It further provided thatif the default continued after the end of the cure period "the Landlord will terminate your tenancy in accordance with the applicable provisions of the law" (id.). In other words, the notice afforded Respondent the option to cure his breach and avert the termination of the tenancy by submitting the requested income affidavits by July 10, 2023.
Upon review of Petitioner's termination notice dated July 20, 2023, it is evident that Respondent heeded the warning in the notice to cure, as it acknowledges that Respondent submitted the 2019-2022 income affidavits by July 5, 2023, five days prior to the July 10, 2023 deadline (NYSCEF 1 at 8-10) and contains no additional factual allegations that would support an ongoing breach under 9 NYCRR §§ 1727-5.3[a][6][ii]). Thus, Petitioner had no right after July 5, 2023, to terminate Respondent's tenancy based on the failure to submit annual income affidavits, as a "violation [for curable conduct] removed during the cure period will not support the termination of a lease based on the tenant's alleged default" (31-67 Astoria Corp. v. Landaira 54 Misc 3d 131[A], citing One E. 8th St. Corp. v Third Brevoort Corp., 38 AD2d 524 [1st Dept 1971]). Accordingly, Petitioner's cause of action under 9 NYCRR §§ 1727-5.3[a][6][ii]) must be dismissed for failure to state a cause of action.
Even if it may no longer evict Respondent for failing to submit the 2019-2022 income affidavits, Petitioner argues it has separately stated a claim under 9 NYCRR §§ 1727-5.3[a][7]), which is referenced in the predicate notices and authorizes termination where a cooperator has "willfully misrepresented or concealed any material fact which would affect eligibility for admission or continued occupancy or rent or maintenance charges to be paid." Unlike the failure to provide income affidavits, a willful misrepresentation is not curable (see 9 NYCRR §§ 1727-5.3[b][1]). Fatal to this cause of action, however, is the absence of any corresponding factual allegations addressing any willful misrepresentation or concealment. DHCR regulations require a landlord not only to state the ground for eviction in the termination notice, but also "the facts supporting such ground " (9 NYCRR §§ 1727-5.3[b][2]). Given this statutory mandate, a termination notice must contain more than "unparticularized allegations [that are] too generic and conclusory to enable tenant to prepare a defense and otherwise satisfy the specificity requirement" of the statutory scheme (69 E.M. LLC v Mejia, 49 Misc 3d 152[A] [App Term, 1st Dept 2015]; 888 E. 96th St., LLC v Hargrove, 61 Misc 3d 137[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]; London Terrace Gardens, L.P. v Heller, 40 Misc 3d 135[A] [App Term, 1st Dept 2009]).
Here, by offering no factual specifics as to Respondent's alleged willful [*4]misrepresentations or concealment regarding his tenancy, Petitioner's termination notice is defective, as it deprives Respondent of the ability to "prepare a legal defense" (Domen Holding Co. v Aranovich, 1 NY3d 117, 125 [2003]; see also Rochdale v Baker, 2021 NY Slip Op 32000[U] [Civ Ct, Queens Co 2021]; Singh v Ramirez, 20 Misc 3d 142[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists, 2d Dept 2008]). Nor does the court accept Petitioner's argument that the notice is sufficient because a claim for willful concealment is implied by virtue of the four years of missing income affidavits alleged in the notice. "Termination notices must be clear, unambiguous and unequivocal in order to serve as the catalyst which terminates a leasehold" (Lehtonen v Dellaquila, 67 Misc 3d 139[A] [App Term, 2d Dept, 9th & 10th Jud Dists 2020] [internal citations and quotations omitted]; see also Hacels, LLC v TM701 Corp., 39 Misc 3d 13 [App Term, 1st Dept 2013]). As a facially insufficient predicate notice is non-amendable, this cause of action must be dismissed (see Chinatown Apartments Inc. v. Chu Cho Lam, 51 NY2d 786 [1980]; Bray Realty, LLC v Pilaj, 59 Misc 3d 130(A) [App Term, 2d, 11th & 13th Jud Dists, 2d Dept 2018]).
Finally, to the extent Petitioner argues it may maintain a holdover under RPAPL 711(1) based on Respondent's failure to pay monthly maintenance and surcharges, this position is precluded by the plain language of the parties' lease. It is axiomatic that a "holdover proceeding based upon a landlord's termination of a lease may only be maintained where there is a conditional limitation in the lease providing for its early termination" (Fourth Hous. Co., Inc. v Bowers, 53 Misc 3d 43 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2016], citing Perrotta v Western Regional Off-Track Betting Corp., 98 AD2d 1 [4th Dept 1983]). Here, the sole conditional limitation clause in the parties' occupancy agreement is in Section 20, which authorizes early termination by lapse of time for certain breaches upon service of a three-day notice (see NYSCEF 12 at 9). However, the conditional limitation clause states that it cannot be based on a default in the "[c]ooperator's agreement to pay rent" (id.).[FN1]

Unquestionably, Respondent's failure to pay maintenance and other carrying charges is a breach of the agreement to pay rent (see 9 NYCRR §§ 1727-4.1(a); Occupancy Agreement at Section 2, NYSCEF 12 at 3; Rochdale Vil., Inc. v Chadwick, 73 Misc 3d 131[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]; Riverbend Hous. Co. v Stephenson, 172 Misc 2d 385 [App Term, 1st Dept 1997]). Similarly, moneys due as annual surcharges are characterized as unpaid rent in the parties' occupancy agreement (see Section 2(a)(3), NYSCEF 12 at 3), Petitioner's termination notice, which describes the surcharges as "additional maintenance" (see NYSCEF 1 at 8-9), and DHCR regulations, which provide that where a tenant fails to timely submit annual income affidavits, such conduct will "be assumed to indicate excess income" and in such cases the "rent will be raised to the maximum in the surcharge schedule" (9 NYCRR § 1727-2.6 [a] [emphasis added]; see also 9 NYCRR §§ 1727-4.1[a],[d]). Accordingly, because it is evident from the occupancy agreement and DHCR regulations that maintenance and surcharges constitute rent, and because the conditional limitation clause in the parties' occupancy [*5]agreement does not authorize early termination of the lease based on the failure to pay rent, no cause of action lies in a holdover for a default in payment of maintenance or surcharges, and the branch of the Petition on this basis must be dismissed (see BEC Continuum Owner LLC v Foster, 80 Misc 3d 1233[A] [Civ Ct, Kings Co 2023]; 1900 Albemarle, LLC v Solon, 57 Misc 3d 158[A] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2017]; Fourth Hous. Co., Inc. v Bowers, 53 Misc 3d at 45).[FN2]

CONCLUSION
For the foregoing reasons, Respondent's motion to dismiss is granted and this proceeding is dismissed without prejudice. This constitutes the decision and order of the court.
Dated: July 10, 2024
Queens, New York
HON. LOGAN J. SCHIFF, J.H.C.

Footnotes

Footnote 1:This is consistent with appellate case law holding that "a conditional limitation providing for [the] forfeiture of the tenancy upon the nonpayment of rent is void as against public policy since it deprives the tenant of [his] right to interpose [a] breach of warranty of habitability claim" (see Windy Acres Farm, Inc. v Penepent, 40 Misc 3d 63 [App Term, 2d Dept, 9th & 10th Jud Dists, 2013] [internal citation and quotation omitted]).

Footnote 2:While Petitioner may have a remedy in a nonpayment proceeding under RPAPL 711(2), this cause of action is mutually exclusive from a holdover as it presumes the existence of an ongoing landlord-tenant relationship (see Greenport Preserv., L.P. v Heyward, [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]). The court further notes, but need not resolve in this proceeding, the open question of law as to whether Mitchell-Lama surcharges may be sought in a nonpayment following the legislature's amendment of RPAPL 702 on June 14, 2019 as part of the Housing Stability and Tenant Protection Act (L 2019, ch 36, §§ 11, 29), which now provides that: "No fees, charges or penalties other than rent may be sought in a summary proceeding pursuant to this article, notwithstanding any language to the contrary in any lease or rental agreement." While the statute was subsequently amended on December 22, 2021, to allow private cooperatives the right to seek fees collectible in a lease as "added rent" (see Thomas Jefferson Owners Corp. v Lokshin, 2024 NY Slip Op 24169 [Civ Ct, Queens Co 2024]), the more narrow definition of rent in the statute still applies to cooperatives subject to Article II of the Private Housing Finance Law, which encompasses Mitchell-Lama cooperatives (see RPAPL 702(2); see also Riverbay Corp. v Carrey, 29 Misc 3d 855 [Civ Ct, Bronx Co 2010] [discussing, prior to the amendment of RPAPL 702, the distinction between surcharges as added rent in state- and city-assisted Mitchell-Lama projects]; Rochdale Vil., Inc. v Goode, 16 Misc 3d 49 [App Term, 2d Dept, 2d & 11th Jud Dists 2007]).